## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-20173-CR-ROSENBAUM/MATTHEWMAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MALINSKY BAZILE,

      Defendant.

_____/

### ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Malinsky Bazile's Motion to Suppress Physical Evidence [D.E. 29], which was previously referred to the Honorable Bill Matthewman for proposed findings and a recommended disposition.  Magistrate Judge Matthewman held a hearing on the Motion, and Bazile filed a supplemental memorandum [D.E. 34].  After consideration, Judge Matthewman filed a Report and Recommendation [D.E. 37] recommending that the Court deny the Motion to Suppress.  Bazile then filed Objections to the Report and Recommendation [D.E. 40].

The Court has conducted a *de novo* review of Bazile's Motion, all supporting and opposing filings, Magistrate Judge Matthewman's Report and Recommendation, Bazile's Objections, and the entire record.  In addition, the Court has reviewed a transcript of the hearing held on the Motions [D.E. 41].  After careful consideration, the Court now overrules Bazile's Objections and adopts Judge Matthewman's Report and Recommendation.

### *Discussion*

Defendant Malinsky Bazile, a police officer of the Miami Police Department at the time of

the conduct alleged in the Information in this case, was charged with trafficking in unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2); exceeding his authorized access to a protected computer, with intent to defraud, in violation of 18 U.S.C. § 1030(a)(4); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  The events leading to Bazile's filing of his pending Motion to Suppress occurred on October 1 and 3, 2012, and are accurately recounted in some detail in Judge Matthewman's Report and Recommendation.  Therefore, they will not be repeated here.

Bazile's objections to Judge Matthewman's Report and Recommendation all challenge Judge Matthewman's legal analysis.  The Court addresses each objection in turn.

A.     *The Officers' Alleged Use of a Ruse to Obtain Bazile's Invitation for the Officers to Enter His Residence*

Bazile first complains that Federal Bureau of Investigation Special Agent Donald Morin and Federal Task Force Officer Osvaldo Ramos's manner of procuring Bazile's invitation to them to enter his residence violated Bazile's rights.  Specifically, on October 1, 2012, the officers, dressed in business attire with their weapons concealed at the time, went to Bazile's residence in North Miami and knocked on the door.  When Bazile answered, Agent Morin identified himself as an FBI special agent and displayed his credentials.  He told Bazile that he and Officer Ramos were conducting an investigation and requested Bazile's assistance with that investigation.  Bazile then invited the officers into his residence to speak with them.

Prior to visiting Bazile, Agent Morin testified without being impeached, Agent Morin did not intend to arrest Bazile on October 1, 2012.  Indeed, he testified that he did not even believe that he had probable cause to effectuate Bazile's arrest, so he did not prepare an operational plan or seek approval from his supervisors to arrest Bazile.

After the officers entered Bazile's apartment, he went to the bathroom to change his clothes. The officers did not follow him in.  When he came out, the officers did not restrain his movement in any way, nor did they direct his actions.  It is further noteworthy that they did not search him for weapons, even though they knew that Bazile was a police officer at the time.  Instead, Bazile sat on his bed with the officers, since there was no place else to exist, and Agent Morin explained to Bazile that he and Officer Ramos were conducting an investigation into tax-refund fraud.  They further explained the steps that they had undertaken in their investigation and informed Bazile that they knew that he was involved in the scams.  Before Agent Morin disclosed his knowledge, Bazile said and did nothing of consequence relating to the matters under investigation.  It was only after Agent Morin revealed the subject matter of the investigation and the officers' knowledge of Bazile's involvement in the conduct under investigation that Bazile volunteered, "That's me," when shown a photograph from an ATM surveillance camera.

Bazile contends that all evidence obtained from the October 1, 2012, visit (and thereafter) should be suppressed because the officers allegedly gained access to Bazile's home through the use of a ruse.  This Court respectfully disagrees.

A person must be given his rights under *Miranda v. Arizona*, 384 U.S. 486 (1966), if tthat person is subjected to "custodial interrogation."  *United States v. Bennett*, 626 F.2d 1309, 1311 (5th Cir. Unit B 1980).  Whether a person is in "custody" and therefore entitled to hear his *Miranda* rights is a mixed question of law and fact.  *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996) (citation omitted).  To determine whether a person is in custody, the court must consider whether, "under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement . . . to such extent that he would not feel free to leave." *Id.*

-3-

(citation and internal quotation marks omitted).  More specifically, the touchstone of this inquiry centers on "whether restrictions on the suspect's freedom of movement are 'of the degree associated with formal arrest.'" *Id.* (citation omitted).

Here, as Judge Matthewman correctly found and clearly explained, Bazile was not in custody at the time of his statements to the officer.  And, contrary to Bazile's contention, the fact that Bazile was sitting on a bed with the two officers at the time he first incriminated himself does not somehow affect the analysis.  Particularly in light of the rest of the circumstances, there is nothing about this fact that is remotely like restrictions on a person's freedom of movement of the degree associated with formal arrest.  Bazile's alleged concern that other officers might have also been present outside is likewise insufficient to establish custodial interrogation.  There is no evidence to suggest that anything that Agent Morin, Officer Ramos, or any other officers present outside the residence, outside of Bazile's sight suggested that anyone was guarding the exits, preventing Bazile from leaving, or precluding Bazile from asking the officers to leave his home.  As the Eleventh Circuit has explained, "the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person. . . . Whether a person knows he is guilty and believes incriminating evidence will soon be discovered is irrelevant." *Moya*, 74 F.3d at 1119 (citations omitted).  Under this standard, Bazile was not in custody and was not entitled to be read his *Miranda* warnings.[1]

Moreover, even looking solely at the alleged trickery that the officers used to obtain entry to Bazile's residence, it is not the type of deceit that would have invalidated consent, had *Miranda*

---

[1]The Court further notes that evidence was presented at the hearing that Bazile was trained in *Miranda* and the circumstances under which warnings must be given to a suspect. Thus, although the Court does not rely on this fact in adopting Judge Matthewman's Report and Recommendation, as a matter of fact, Bazile should have been well aware of the fact that he was free to leave or to ask the officers to leave.

warnings been given and waived.  Whether a defendant's statement was voluntary is a question of law.  *United States v. Farley*, 607 F.3d 1294, 1326 (11th Cir. 2010) (citation omitted).  No *per se* rule exists that a statement is not voluntary if it is obtained after employing any type of deception at all.  *Farley*, 607 F.3d at 1326-27.  Rather, "trickery or deceit is only prohibited to the extent it deprives the suspect of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them."  *Id.* at 1327 (quoting *Soffar v. Cockrell*, 300 F.3d 588, 596 (5th Cir. 2002) (internal quotation marks omitted).  Thus, whether deception or trickery renders a statement involuntary must be evaluated on a case-by-case basis.  *Id.* at 1329 (citation omitted).

In *Farley*, for example, officers detained the defendant for questioning.  Although they were investigating him about computer-related child-pornography and exploitation charges, they initially tried to disguise the nature of questioning by advising the defendant that they were speaking to him about a national-security matter.  They further told the defendant that the FBI had a program that flagged the use of certain words associated with terrorist threats.  In fact, the agents' investigation had nothing to do with national security or a terrorist threat.  In addition, the agents explained to the defendant that they wanted to talk with him for about forty-five minutes, but they wound up speaking with him for twice as long.  Finally, the agents falsely advised the defendant that they were waiting on a facsimile from another office in a different state.  Despite all of this misinformation, shortly after the questioning began, it became clear that agents were actually asking whether the defendant had gone to Atlanta to have sex with a child.  The defendant challenged the admissibility of his resulting statement, asserting that it was not voluntary because it was the product of trickery and deceit.

The Eleventh Circuit disagreed.  *See id.*  Indeed, the court specifically found, "It does not

matter if the agents deliberately lied to [the defendant] about the subject of the investigation in order to trick him into signing a waiver they thought he might not otherwise have signed." *Id.* at 1331. Instead, the only relevant inquiry concerned the defendant's state of mind. *Id.* As the court explained, it had to assess whether, had the defendant known the actual purpose of the questioning before he agreed to answer questions, the defendant would have declined to speak. *Id.* The court concluded that the defendant would not have done so, based on the fact that the defendant continued to speak after he learned the true purpose of the agents' questioning. *Id.*

Here, although the agents did not read Bazile his rights before beginning their discussion with him, because Bazile was not in custody, they need not have done so. But the reasoning in *Farley* is nonetheless instructive on the issue of trickery and deceit. Like the agents in *Farley*, the officers in this case clearly revealed the true purpose of their investigation and their questioning before Bazile ever made any statements incriminating himself. In fact, they showed him photographs of himself that they advised him were taken in the course of investigating the very fraud scam in which they told him they knew he was involved. Despite the fact that the agents made Bazile well aware of the true purpose of their visit and the fact that Bazile was not in custody, he chose to make incriminating statements. Under these circumstances, Bazile can fare no better than the *Farley* defendant.

B.      *Judge Matthewman Correctly Denied Bazile's Motion to Suppress the Statements He Gave at the FBI Office*

Bazile next objects that he was asked to ride to the FBI office in Agent Morin's car, and Agent Morin sat in the backseat with him and continued to question him during the ride. Judge Matthewman correctly explains in his Report and Recommendation why this was not custodial. Bazile was not required to go to the FBI office; he chose to do so after being given the opportunity

to cooperate in the FBI's ongoing investigation.  He could have sought to leave at any time, but he did not do so.  Once at the FBI office, Bazile was given breaks and allowed to smoke cigarettes.  He was not handcuffed or otherwise restrained, and while Bazile protests that he was "followed whenever he wanted to use the restroom or have a cigarette," D.E. 40 at 5, nearly all visitors to the FBI building must be escorted at all times.  It is not an unrestricted area.  In other words, the escorts were not indicative of being in custody but rather resulted from the fact that the building where the interviews occurred were restricted.  In short, Bazile's objections regarding his statements at the FBI office must be overruled.

### C.     *Judge Matthewman Correctly Ruled on the* Garrity *Issue*

Finally, Bazile asserts that Judge Matthewman wrongly discounted his argument that relied on *Garrity v. New Jersey*, 385 U.S. 493 (1967).  In fact, however, a review of the Report and Recommendation reveals that although Judge Matthewman found Bazile's *Garrity* argument to have been untimely raised, he nonetheless went on to analyze the merits of it.  *See* D.E. 37 at 20-21.  This Court agrees with Judge Matthewman's analysis.  Bazile raises no points that Judge Matthewman failed to consider.  Accordingly, Bazile's objections to Judge Matthewman's *Garrity* analysis are overruled.

### *Conclusion*

For the foregoing reasons, the Court agrees with Magistrate Judge Matthewman's Report and Recommendation and overrules Bazile's Objections.  Accordingly, it is **ORDERED and ADJUDGED** as follows:

1.     Magistrate Judge Matthewman's Report and Recommendation [D.E. 37] is hereby

**AFFIRMED and ADOPTED**;

2.      Defendant Malinsky Bazile's Objections to the Report and Recommendation [D.E. 40] are **OVERRULED**, and Defendant Malinsky Bazile's Motion to Suppress Physical Evidence [D.E. 29] is **DENIED**.

**DONE AND ORDERED** at Fort Lauderdale Florida, this 17th day of July 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:

The Honorable Bill Matthewman
Counsel of Record